**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

THE STATE OF LOUISIANA,
By and through its Attorney General, JEFF
LANDRY;

THE STATE OF INDIANA,
By and through its Attorney General, TODD
ROKITA,

THE STATE OF MISSISSIPPI,                    CIVIL ACTION NO. _____
By and through its Attorney General, LYNN
FITCH;

                              PLAINTIFFS,

v.

JOSEPH R. BIDEN, JR. in his official capacity
as President of the United States;

THE UNITED STATES OF AMERICA;

FEDERAL ACQUISITION REGULATORY
COUNCIL;

GENERAL SERVICES ADMINISTRATION;

ROBIN CARNAHAN, in her official capacity
as General Services Administrator;

JEFFREY A. KOSES, in his official capacity as
Senior Procurement Executive & Deputy Chief
Acquisition Officer, General Services
Administration;

UNITED STATES OFFICE OF
PERSONNEL MANAGEMENT;

KIRAN AHUJA, in her official capacity as
director of the Office of Personnel
Management;

OFFICE OF MANAGEMENT AND
BUDGET;

SHALANDA YOUNG, in her official capacity
as Acting Director of the Office of Management
and Budget;

LESLEY A. FIELD, in her official capacity as
Acting Administrator for Federal Procurement,
Office of Management and Budget;

SAFER FEDERAL WORKFORCE TASK
FORCE;

JEFFREY ZIENTS, in his official capacity as
co-chair of the Safer Federal Workforce Task
Force and COVID-19 Response Coordinator;

NATIONAL AERONAUTICS AND SPACE
ADMINISTRATION;

BILL NELSON, in his official capacity as
Administrator of the National Aeronautics and
Space Administration;

KARLA S. JACKSON, in her official capacity as
Assistant Administrator for Procurement,
National Aeronautics and Space Administration;

UNITED STATES DEPARTMENT OF
DEFENSE;

LLOYD AUSTIN in his official capacity as the
United States Secretary of Defense;

JOHN M. TENAGLIA, in his official capacity
as Principal Director of Defense Pricing and
Contracting, Department of Defense;

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS;

DENIS MCDONOUGH in his official capacity
as United States Secretary of Veterans Affairs;

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES;

XAVIER BECERRA, in his official capacity as
Secretary of Health and Human Services;

UNITED STATES DEPARTMENT OF ENERGY;

CENTERS FOR DISEASE CONTROL;

ROCHELLE WALENSKY, in her official capacity as Director of the Centers for Disease Control,

DEFENDANTS.

## **COMPLAINT**

The States of Louisiana, Indiana, and Mississippi bring this civil action against the above-listed Defendants for declaratory and injunctive relief and allege as follows:

### INTRODUCTION

1.      The President of the United States has forgotten that "even in a pandemic, the Constitution," which he took an oath to uphold, "cannot be put away and forgotten." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020). At the President's impetus, and without congressional authorization, the Executive Branch has implemented a Contractor Vaccine Mandate that affects one-fifth of the American workforce directly and the entire economy indirectly. This Mandate suffers from a host of fatal flaws. First, it usurps State authority in a core area of State sovereignty—public health—and does so by relying upon laws that have nothing to do with health. Second, the federal regulatory actions implementing the Contractor Vaccine Mandate provide no reasoning whatsoever, and the few fragmentary and conclusory explanations the Executive has provided conflict with each other and with the statutes purportedly authorizing the Mandate. Third, the Contractor Vaccine Mandate violates a litany of constitutional restraints such as the Nondelegation Doctrine and Tenth Amendment. Fourth, it is an action of major economic, social, and political significance: It affects one-fifth of the United States workforce, including untold numbers of Plaintiff States' employees; and it threatens State budgets with widespread implications for safety-net programs,

pension funding, state credit ratings, and virtually all state-funded priorities. It thus pushes the limits of the Executive Branch's and Federal Government's powers under the Constitution. As a result, it can be taken only with crystal clear congressional authorization. But Congress has granted no such authority to the Executive. Standing alone, each flaw independently warrants vacating the Contractor Vaccine Mandate; standing together, they require it.

## PARTIES

2.      Plaintiff State of Louisiana is a sovereign State of the United States of America. Plaintiff Jeff Landry is the Attorney General of the State of Louisiana. He is authorized by Louisiana law to sue on the State's behalf. His offices are located at 1885 North Third Street, Baton Rouge, Louisiana 70802.

3.      Plaintiff State of Indiana is a sovereign state of the United States of America. Plaintiff Todd Rokita is the Attorney General of Indiana. He is authorized by Indiana law to sue on the State's behalf. His offices are located at Indiana Government Center South, 302 W. Washington St., 5th Floor, Indianapolis, Indiana 46204.

4.      Plaintiff State of Mississippi is a sovereign state of the United States of America. Plaintiff Lynn Fitch is the Attorney General of Mississippi. She is authorized by Mississippi law to sue on the State's behalf. Her office's mailing address is 550 High Street, Jackson, Mississippi 39201.

5.      Defendants are officials of the United States government and United States governmental agencies responsible for implementing the Contractor Vaccine Mandate.

6.      Defendant Joseph R. Biden, Jr., is President of the United States.

7.      Defendant Federal Acquisition Regulatory Council ("FAR Council") is responsible for "manag[ing], coordinat[ing], control[ling], and monitor[ing] the maintenance of, issuance of, and changes in the Federal Acquisition Regulation." 41 U.S.C. § 1303(d). The FAR Council issued guidance that is challenged in this lawsuit.

8.     Defendant Safer Federal Workforce Task Force (the "Task Force") was established under President Biden's Executive Order 13991 (86 Fed. Reg. 7045 (Jan. 25, 2021)). Three co-chairs oversee the Task Force: (1) the Office of Personnel Management Director, (2) the Administrator of the General Services Administration, and (3) the COVID–19 Response Coordinator. The OPM Director is also a member of the Task Force.

9.     Defendant General Services Administration ("GSA") is an agency of the United States government.

10.    Defendant Administrator of General Services, Robin Carnahan (the "GSA Administrator"), represents the federal agency responsible for managing and supporting the basic functioning of federal agencies. Carnahan is a co-chair and member of the Task Force.

11.    Defendant Office of Personnel Management ("OPM") is an agency of the United States government.

12.    Defendant Office of Personnel Management Director, Kiran Ahuja ("Director Ahuja"), represents the federal agency responsible for managing human resources for civil service of the federal government. Director Ahuja is a co-chair and member of the Task Force.

13.    Defendant Office of Management and Budget ("OMB") is an agency of the United States government.

14.    Defendant Shalanda Young is the Acting Director of OMB, an office within the Executive Office of the President. 31 U.S.C. §501. She serves as co-chair of the Working Group.

15.    Defendant COVID–19 Response Coordinator, Jeffrey Zients (the "COVID-19 Response Coordinator"), is a co-chair and member of the Task Force.

16.    Defendant National Aeronautics and Space Administration ("NASA") is an agency of the United States government.

17.     Defendant Administrator of NASA, Bill Nelson, is named in his capacity as the Director of the NASA.

18.     Defendant Centers for Disease Control ("CDC") is an agency of the United States government.

19.     Defendant Director of the Centers for Disease Control, Rochelle Walensky (the "CDC Director") is a member of the Task Force.

20.     Defendant National Aeronautics and Space Administration ("NASA") is an agency of the United States government.

21.     Defendants Lesley A. Field, John M. Tenaglia, Jeffrey A. Koses, and Karla S. Jackson are members of the FAR Council by virtue of their roles in their respective agencies. Defendant Lesley A. Field is the Acting Administrator for Federal Procurement of OMB. Defendant John M. Tenaglia is the Principal Director of Defense Pricing and Contracting of the Department of Defense. Defendant Jeffrey A. Koses is the Senior Procurement Executive & Deputy Chief Acquisition Officer of GSA. Defendant Karla S. Jackson is the Assistant Administrator for Procurement of NASA.

22.     Defendant United States Department of Defense ("DOD") is an agency of the United States government.

23.     Defendant United States Secretary of Defense, Lloyd Austin, is named in his official capacity as the United States Secretary of Defense.

24.     Defendant United States Department of Veterans Affairs ("DVA") is an agency of the United States government.

25.     Defendant United States Secretary of Veterans Affairs, Denis McDonough, is named in his official capacity as the United States Secretary of Veterans Affairs.

26.     Defendant United States Department of Health and Human Services ("HHS") is an agency of the United States government.

27.     Defendant Xavier Becerra is the Secretary of Health and Human Services and a member of the Working Group.

28.     Each individually named Defendant is sued in his or her official capacity only.

## JURISDICTION & VENUE

29.     This Court has subject-matter jurisdiction over this case because it arises under the Constitution and laws of the United States. *See* 28 U.S.C. §§1331, 1346, 1361, 2201; 5 U.S.C. §§701-706.

30.     This Court may grant declaratory and injunctive relief under 5 U.S.C. §706, 28 U.S.C. §§1361, 2201, and 2202, and its inherent equitable powers.

31.     Venue is proper in this district because Defendants are United States agencies or officers sued in their official capacities, the State of Louisiana is a resident of this judicial district, no real property is involved, and a substantial part of the events or omissions giving rise to the Complaint occur within this judicial district. *See* 28 U.S.C. §1391(e)(1); *Atlanta & F.R. Co. v. W. Ry. Co. of Ala.*, 50 F. 790, 791 (5th Cir. 1892); *see also California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018).

## BACKGROUND

I.     THE FEDERAL CONTRACTING FRAMEWORK ESTABLISHED BY CONGRESS.

32.     After World War II, Congress enacted the Federal Property and Administrative Services Act "to provide the Federal Government with an economical and efficient system for … [p]rocuring and supplying property and nonpersonal services, … establish[ing] … pools or systems of transportation of Government personnel, … [and] managing [] public utility services." 40 U.S.C. §101(1) ("Procurement Act").

33.     To achieve those aims, Congress authorized the President to "prescribe policies and directives that the President considers necessary to carry out" the Procurement Act. *Id.* §121(a). But

Congress did not authorize the President to issue orders with the force or effect of law. Instead, it vested the power to "prescribe regulations" with the GSA Administrator. *Id.* §121(a), (c).

34.     In 1988, to remedy perceived flaws in the existing procurement system, Congress established the Federal Acquisition Regulation Council "to assist in the direction and coordination of Government-wide procurement policy and Government-wide procurement regulatory activities in the Federal Government." Pub. L. No. 100-679, §3, 102 Stat. 4056, *codified* at 41 U.S.C. §1302(a). The FAR Council consists of the Secretary of Defense, the NASA Administrator, and the GSA Administrator. 41 U.S.C. §1302(b).

35.     Subject to exceptions not relevant here, the FAR Council has exclusive jurisdiction to issue "a single Government-wide procurement regulation." *Id.* §1303(a)(1). No other agency is authorized to issue government-wide procurement regulations. *Id.* §1303(a)(2).

36.     The later-enacted Procurement Policy Act further channels agencies' ability to issue procurement regulations by requiring that any "procurement policy, regulation, procedure, or form"— whether issued by the FAR Council or by an individual agency for that agency—is subject to notice-and-comment procedures that may be waived only if "urgent and compelling circumstances make compliance with the requirements impracticable." *Id.* §1707(a), (b), (d).

## II.     The Biden Administration's Vaccine Policy.

37.     The Biden Administration's initial attempts to address the COVID-19 pandemic focused on measures short of mandating vaccines, and *expressly disclaimed* an intention to impose a vaccine mandate. *See, e.g.*, Press Briefing by Press Secretary Jen Psaki, July 23, 2021, https://bit.ly/3pWnJVr (mandating vaccines "not the role of the federal government"). But as courts blocked several Administration policies short of a vaccine mandate as beyond the Executive's authority, and as, according to his own words, the President's "patience" began "wearing thin" with those "who haven't gotten vaccinated," White House, Remarks by President Biden on Fighting the

COVID-19 Pandemic (Sept. 9, 2021), https://bit.ly/3Ey4Zj6, the Administration decided to take an unprecedented step—issue federal vaccine mandates.

38.     On September 9, 2021, President Biden announced a program aimed at compelling most of the adult population of the United States to be vaccinated. "Remarks by President Biden on Fighting the COVID-19 Pandemic" (Sept. 9, 2021), https://bit.ly/3oI0pKr. Those requirements are part of the President's broader plan to "increase vaccinations among the unvaccinated with new vaccination requirements." *Id.*; *see also* The White House, Path Out of the Pandemic: President Biden's Covid-19 Action Plan, https://bit.ly/3adkMXx; The White House, Vaccination Requirements Are Helping Vaccinate More People, Protect Americans from COVID-19, and Strengthen the Economy (Oct. 7, 2021), https://bit.ly/3lorbp0.

39.     One leg of those vaccine requirements included the actions at issue here. The President announced that he would issue an Executive Order requiring all federal contractors to be vaccinated stating: "If you want to work with the federal government and do business with us, get vaccinated. If you want to do business with the federal government, vaccinate your workforce." Biden Sept. 9, 2021 Remarks.

## III.    The Challenged Actions Comprising the Contractor Vaccine Mandate.

40.     The challenged actions in this case consist of four discrete actions referred to collectively hereinafter as the "Contractor Vaccine Mandate."

41.     First, on September 9, 2021, President Biden issued Executive Order 14042, which directs agencies to ensure that "contracts and contract-like instruments ... include a clause that the contractor or subcontractor shall, for the duration of the contract, comply with all guidance for contractor or subcontractor workplace locations published by the Safer Federal Workforce Task Force" when such guidance is approved by the OMB Director. 86 Fed. Reg. 50,985 (published Sept. 14, 2021).

42.     The Executive Order directs the Task Force to develop guidance regarding COVID-19 for federal contractors and subcontractors. Invoking 3 U.S.C. §301, the Executive Order further purports to delegate to the OMB Director the power to exercise the President's authority under the Procurement Act to determine whether the Task Force Guidance will promote economy and efficiency in federal procurement. 86 Fed. Reg. at 50,985-986.

43.     The Executive Order further instructs the FAR Council to "amend the Federal Acquisition Regulation to provide for inclusion in Federal procurement solicitations and contracts subject to this order" the contract clause relating to COVID-19, and instructs agencies to implement the COVID-19 contract clause in contracts not covered by the FAR.

44.     The Executive Order exempts contracts with a value below "the simplified acquisition threshold," typically $250,000, 86 Fed. Reg. at 50,986-987; FAR §2.101, and specifies that it applies to contracts entered into, renewed, or with an option to be exercised on or after October 15, 2021, 86 Fed. Reg. at 50,987.

45.     The second challenged action is the Task Force Guidance, issued on September 24, 2021. The Guidance imposes the following requirements on federal contractors and subcontractors: (1) vaccination of covered employees except when an employee is legally entitled to an accommodation; (2) compliance with CDC guidance for masking and physical distancing at workplaces; and (3) designation of a compliance coordinator. *COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors* (Sept. 24, 2021), https://bit.ly/3jTHSHJ. The Guidance clarifies that prior COVID-19 infection evidenced by an antibody test does not satisfy the vaccination mandate. *Id.* The Guidance also states that even employees who work outdoors are subject to the requirements. *Id.* The compliance deadline for full vaccination is January 4, 2022. The White House, *Background Press Call on OSHA and CMS Rules for Vaccination in the Workplace* (Nov. 3, 2021), bit.ly/3k1zVAz The Guidance states that the Task Force will consider updating the Guidance "as

warranted by the circumstances of the pandemic and public health conditions." *COVID-19 Workplace Safety, supra.* Aside from conclusory statements regarding decreasing the spread of COVID-19 and a reference to the Executive Order, the Guidance contains no substantive justification for its mandates.

46.     The third challenged action is the OMB Director's determination that the Task Force Guidance "will improve economy and efficiency." 86 Fed. Reg. 53,691-692 (Sept. 28, 2021) ("OMB Rule"). The OMB Rule, which occupies less than two pages of the Federal Register, includes as justification only the conclusory statement that the Task Force Guidance will "reduc[e] absenteeism and decreas[e] labor costs for contractors and subcontractors working on or in connection with a Federal Government contract." *Id.* at 53,692.

47.     Fourth, on September 30, 2021, the FAR Council, relying on the Executive Order, issued a guidance document "encourag[ing]" agencies "to make ... deviations" to the FAR to be "effective until the FAR is amended." *Issuance of Agency Deviations to Implement Executive Order 14042* (Sept. 30, 2021) ("FAR Guidance"), https://bit.ly/3bvdizB. A deviation is a clause that is inconsistent with the FAR. FAR §1.401. The FAR prescribes procedures for making individual deviations and class deviations. *Id.* §§1.403-04.

48.     But the FAR itself prescribes procedures for deviations and makes clear that a deviation is not an appropriate procedure to implement a government-wide procurement policy. It instructs agencies that they "should propose a FAR revision" when they "know[] that it will require a class deviation on a permanent basis." FAR §§1.401, 403-04; 48 C.F.R. §§1.401, 403-04.

49.     The FAR Guidance provides no rationale for the deviation and relies only upon Executive Order 14042.

### III.    The Contractor Vaccine Mandate's Extensive Scope.

50.     The Contractor Vaccine Mandate is of massive scope. The Department of Labor has recognized that "approximately one-fifth of the entire U.S. labor force" is employed by federal

contractors. Dep't of Labor, *History of Executive Order 11246*, Office of Contract Compliance Programs, https://bit.ly/2ZEmLC8.

51.     The Task Force Guidance ensures that the Contractor Vaccine Mandate's scope is as broad as possible. It defines a "contractor or subcontractor workplace location" to "mean[] a location where covered contract employees work, including a covered contractor workplace or Federal workplace." Task Force Guidance at 3. "Covered contractor employee," in turn, "means any full-time or part time employee of a covered contractor working on or in connection with a covered contract or working at a covered contractor workplace. This includes employees of covered contractors who are not themselves working on or in connection with a covered contract." *Id.* at 4. "Covered contractor workplace" "means a location controlled by a covered contractor at which any employee of a covered contractor working on or in connection with a covered contract is likely to be present during the period of performance for a covered contract. A covered contractor workplace does not include a covered contractor employee's residence." *Id.* Thus, the Guidance ensures that the Contractor Vaccine Mandate applies to all employees of a contractor or subcontractor who is a party to a federal contract—even if the employee's work is completely unrelated to the contract or if the employee will never work in a location with a co-worker who is working on a federal contract.

52.     Although the Guidance exempts those with "a sincerely held religious belief, practice, or observance," it provides that those who are not vaccinated, including those with religious exemptions, are subject to masking and social distancing requirements more onerous than for those who are vaccinated. Task Force Guidance at 5.

53.     Recognizing the vast nature of the Contractor Vaccine Mandate, the Task Force *Guidance* clarifies that it purports to *preempt all contrary State laws. Id.* at 13.

IV.     **Plaintiff States' Harm from the Contractor Vaccine Mandate.**

54.     Plaintiff States will suffer immediate and irreparable harm from the Contractor Vaccine Mandate. Because Plaintiff States maintain numerous federal contracts with the federal government and intend on continuing to contract with the federal government, they are directly regulated by the Contractor Mandate.

55.     Louisiana or its state entities regularly contract with the federal government and have countless federal contracts and partnerships that will be subject to the Contractor Vaccine Mandate. For example, Louisiana routinely oversees contracts implementing federally-funded projects for hurricane and flood resiliency and recovery, housing and community development funding, health care funding, education funding, and research through its three university systems. Beyond that, Louisiana has entered into a cooperative agreement with the U.S. Department of Justice through which the Department provides funds to and support the Louisiana Internet Crimes Against Children ("ICAC") Task Force.  The ICAC Task Force relies on this funding and support in order to protect children by preventing, investigating, and prosecuting child exploitation crimes.

56.     The threat is imminent: Louisiana has already identified several communications sent by federal agencies demanding that Louisiana agencies, boards, commissions, or employees acquiesce in the Mandate, committing the State of Louisiana and exposing it to the loss of funds or clawback of funds in the future.

57.     Louisiana or its state entities currently have contracts subject to renewal or option, both of which Defendants have said it will not exercise unless the State acquiesces in the Contractor Vaccine Mandate. Beyond that, Louisiana or its state entities will continue to pursue government contracts in the future that will be subject to the Contractor Vaccine Mandate.

58.     Indiana or its state entities regularly contract with the federal government and have federal contracts and partnerships that will be subject to the Contractor Vaccine Mandate. Defendants

have notified Indiana or its state entities that they will be required to amend current contracts to incorporate the Contractor Vaccine Mandate. Indiana or its state entities will continue to pursue government contracts in the future that will be subject to the Contractor Vaccine Mandate.

59.     Mississippi or its state entities regularly contract with the federal government and have countless federal contracts and partnerships that will be subject to the Contractor Vaccine Mandate. Mississippi routinely oversees contracts implementing federally-funded projects for, among other things, public safety, health care funding, education funding, and research through its university systems.  For example, Mississippi has entered into a cooperative agreement with the U.S. Department of Justice through which the Department provides funds to and supports the Mississippi Internet Crimes Against Children ("ICAC") Task Force.  The ICAC Task Force relies on this funding and support in order to protect children by preventing, investigating, and prosecuting child exploitation crimes.

60.     Mississippi or its state entities currently have contracts subject to renewal or option, both of which Defendants have said it will not exercise unless the State acquiesces in the Contractor Vaccine Mandate. And Mississippi or its state entities will continue to pursue government contracts in the future that will be subject to the Contractor Vaccine Mandate.

61.     Plaintiff States' employees are generally not required to be vaccinated and many are granted constitutionally based civil service job protections. And State employees and officers do not have the unilateral authority to authorize the expenditure and policies necessary to implement the Contractor Mandate. The Contractor Vaccine Mandate thus places overwhelming pressure on the State to change its laws and policies and threatens Plaintiff States with the loss of millions in future contracting opportunities. *See Texas v. United States*, 787 F.3d 733, 752 n.38 (5th Cir. 2015) ("Texas's interest in not being pressured to change its law is more directly related to its sovereignty than was Massachusetts's interest in preventing the erosion of its shoreline."). And the Contractor Vaccine

Mandate purports to preempt State laws including potentially displacing the standards set out in State Religious Freedom Restoration Acts, *see* Task Force Guidance at 9-10, 13, and state statutes precluding government entities from requiring documentation of vaccine status, *see, e.g.,* Ind. Code § 16-39-11-5.

62.     Because the Guidance requires contractors and subcontractors—which include agencies and political subdivisions of Plaintiff States—to enforce the Contractor Vaccine Mandate among their employees and subcontractors, the Plaintiff States will face increased costs related to that enforcement, including costs associated with termination of employees who refuse to comply.

63.     Because the Guidance requires contractors and subcontractors—which include agencies and political subdivisions of Plaintiff States—to enforce the Contractor Vaccine Mandate among their employees and subcontractors, it directly infringes the State's sovereign authority. Agencies and political subdivisions of the Plaintiff States now have a duty to enforce the *federal* Contractor Vaccine Mandate.

64.     The Guidance's breadth means that scores of employees of the Plaintiff States who are not involved in any federal contract will have to be vaccinated. That will not only increase costs to the Plaintiff States but also make it harder to retain and attract employees. Current events involving private companies show that vaccine mandates have led to employees quitting or being fired in large numbers rather than getting vaccinated. *See, e.g.,* Chris Isidore et al., *supra.* Furthermore, if States choose to exercise their sovereign prerogative not to require vaccine mandates, they will be threatened with the loss of federal funds.

65.     The Contractor Vaccine Mandate harms Plaintiff States' sovereign, quasi-sovereign, and *parens patriae* interests by imposing pressure to change State laws and policies, harming the economic wellbeing of Plaintiff States' employees and citizens, usurping Plaintiff States' traditional police power, and undermining Plaintiff States' commitment to religious liberty and individual rights embodied in their laws and policies. *See, e.g.,* Ind. Code § 16-39-11-5 (prohibiting state and local

government agencies from issuing or requiring an immunization passport). For example, the Task Force Guidance purports to preempt State Religious Freedom Restoration Acts or other State conscience-protecting legislation, which is currently in force in each Plaintiff State. *See, e.g.*, Ind. Code § 34-13-9-8; La. R.S. 13:5231-42(6) (declaring Louisiana's legislative "intent"); La. R.S. 17:170(E) (providing for student written dissent from vaccine requirements and protecting right to enroll); *see also* Task Force Guidance at 9-10, 13.

66.     The Guidance requires employees to prove vaccination status with documentation, and on information and belief, agencies of the Plaintiff States often possess such documentation. *See* Task Force Guidance at 9. A predictable consequence of the Contractor Vaccine Mandate, in addition to commandeering state employees to enforce the rule, is an increase in the number of people seeking documentation from the Plaintiff States regarding vaccination status. *See Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019). This will increase costs to the Plaintiff States.

67.     A natural and predictable consequence of the vaccine mandate is that numerous employees may be fired, retire, or quit their jobs, including employees of businesses within the Plaintiff States. For example, federal contractors at John C. Stennis Space Center in Hancock County, Mississippi have said they would choose unemployment over being forced to take a vaccination shot.[1] This injures the Plaintiff States' quasi-sovereign and *parens patriae* interest in the economic well-being of their citizens. It further injures the Plaintiff States in that it will likely increase the burden on the Plaintiff States' unemployment insurance funds and the cost to taxpayers for termination costs, destabilize pension funding and the availability of funds to pay bond obligations, and inflict economic disruption on the States' existing budgets and their economies as a whole.

---

[1] Tristan Rupert, *'Jab or job': Employees from Stennis, other federal contractors speak out against vaccine mandate*, WLOX.com (Oct. 26, 2021), https://www.wlox.com/2021/10/27/hancock-county-community-members-stand-against-vaccine-mandate-federal-contractors/.

68.     The Contractor Vaccine Mandate thus threatens immediate and irreparable harm to Plaintiff States. Monetary damages cannot adequately address these injuries. And the Mandate's widespread and permanent effects require immediate injunctive relief. Defendants would suffer no hardship from an order preventing them from acting unconstitutionally and illegally, and the public interest is served when the federal government follows the Constitution and federal laws.

69.     Declaratory and injunctive relief vacating the Contractor Vaccine Mandate as unlawful and enjoining its implementation would redress those harms.

### CLAIMS FOR RELIEF

### COUNT I
**The Contractor Vaccine Mandate Is Contrary to Law**
**(5 U.S.C. §706; 40 U.S.C. §§101; 121)**

70.     Plaintiff States repeat and incorporate by reference each of the Complaint allegations stated above.

71.     The Procurement Act's purpose "is to provide the Federal Government with an economical and efficient system for" enumerated procurement activities, including "[p]rocuring and supplying property and nonpersonal services," use and disposal of property, and records management. 40 U.S.C. §101.

72.     The Procurement Act vests the President with power to "prescribe policies and directives that [he] considers necessary to carry out" the Act. 40 U.S.C. §121(a). Such "policies must be consistent with" the Procurement Act's purpose of "provid[ing] the Federal Government with an economical and efficient system" *for procurement. Id.*

73.     The Contractor Vaccine Mandate violates the Procurement Act because Defendants have failed to demonstrate that the Executive Order, OMB Rule, Task Force Guidance, and FAR Guidance are necessary to carry out an "economical and efficient system" of federal contracting. 40 U.S.C. §101.

74.     Defendants do not even try to connect the Mandate with that statutory language. And no connection exists. Far from promoting "economy" and "efficiency," the Mandate will have the opposite effect by causing the large-scale resignation of federal contractor employees. *See, e.g.*, Chris Isidore et al., *72% of unvaccinated workers vow to quit if ordered to get vaccinated*, CNN.com (Oct. 28, 2021), https://cnn.it/3nMB0wZ. And the Mandate's breadth far exceeds any nexus between efficiency and economy by, for example, applying to employees who work remotely and to subcontractors with no direct connection to federal procurement. Indeed, the President's own words disclaim any connection to federal procurement and instead emphasize he has simply "lost patience" with the "unvaccinated."

75.     The Procurement Act's text nowhere evinces an authorization to issue the Contractor Vaccine Mandate. Defendants have demonstrated no nexus between the Mandate's creation of a public health scheme and the promotion of an efficient and economical contracting system. Accordingly, the Mandate is contrary to law. *See Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Kahn*, 618 F.2d 784, 793 (D.C. Cir. 1979).

76.     Additionally, because the Contractor Vaccine Mandate is a federal action involving issues of major economic, social, and political significance, the Mandate must be authorized by a clear statement of unambiguous congressional intent. *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021). The Executive cannot "bring about an enormous and transformative expansion in [its] regulatory authority without clear congressional authorization." *Util. Air Regulatory Grp.*, 573 U.S. at 324; *see also Brown & Williamson Tobacco Corp.*, 529 U.S. at 159 (rejecting Executive claim to "jurisdiction to regulate an industry constituting a significant portion of the American economy" absent clear congressional authorization). Yet the Contractor Vaccine Mandate does precisely that. This lack of statutory authorization is doubly fatal because "Congress does not casually authorize administrative agencies to interpret a statute to push the limit of congressional authority," *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172-73 (2001), particularly

when the Executive's action would alter "the constitutional balance between the National Government and the States," *Bond v. United States*, 572 U.S. 844, 862 (2014). Neither the Procurement Act nor any other provision of law contains the necessary clear statement to authorize the Contractor Vaccine Mandate, which, as discussed below, pushes the limits of congressional power under the Commerce Clause, the Nondelegation Doctrine, and the Tenth Amendment.

## COUNT II
### The Contractor Vaccine Mandate Violates the Nondelegation Doctrine

77.     Plaintiff States repeat and incorporate by reference each of the Complaint allegations stated above.

78.     The Constitution vests Congress with all legislative powers it granted to the federal government. U.S. Const. art. 1, §1. "Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is vested." *A.L.A. Schecter Poultry Corp. v. United States*, 295 U.S. 495, 529-30 (1935).

79.     If the Procurement Act authorizes the President to require contractors to mandate vaccines based on the amorphous terms "economy" and "efficiency," the Act lacks an intelligible principle and is thus an unconstitutional delegation.

## COUNT III
### The Contractor Vaccine Mandate Violates the Tenth Amendment

80.     Plaintiff States repeat and incorporate by reference each of the Complaint allegations stated above.

81.     "The powers not delegated by the Constitution to the United States, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.

82.     No clause of the Constitution authorizes the federal government to impose the Contractor Vaccine Mandate. Public health—and vaccinations in particular—have long been recognized as an aspect of police power reserved to the *States*, not the Federal Government. *See, e.g.*,

*Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 24 (1905); *see also Hillsborough Cty.*, 471 U.S. at 719 ("[T]he regulation of health and safety matters is primarily, and historically, a matter of local concern."); *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring in the denial of application for injunctive relief) (our Constitution principally entrusts "[t]he safety and the health of the people" to the politically accountable officials of the States "to guard and protect"); *State v. Becerra*, 2021 WL 2514138, at *15 (M.D. Fla. June 18, 2021) ("The history shows ... that the public health power ... was traditionally understood — and still is understood — as a function of state police power.").

83.   By encroaching upon the States' traditional police power, particularly without clear authorization from Congress, Defendants have exceeded their authority and violated the Tenth Amendment.

## COUNT IV
### The Contractor Vaccine Mandate Violates the Anti-Commandeering Doctrine

84.   Plaintiff States repeat and incorporate by reference each of the Complaint allegations stated above herein.

85.   The Tenth Amendment and structure of the Constitution deprive Congress of "the "the power to issue direct orders to the governments of the States," *Murphy v. NCAA*, 138 S. Ct. 1461, 1476 (2018), and do not tolerate the federal government commandeering State officers "into administering federal law," *Printz v. United States*, 521 U.S. 898, 928 (1997).

86.   The Contractor Vaccine Mandate clearly violates this doctrine by requiring Plaintiff States to enforce the Mandate against State employees, including employees with no connection to federal contracts and those who work outside and remotely, and against the States' subcontractors.

## COUNT V
### The Contractor Vaccine Mandate Violates the Spending Clause

87.    Plaintiff States repeat and incorporate by reference each of the Complaint allegations stated above.

88.    The Contractor Vaccine Mandate is an unconstitutional condition on Plaintiff States' receipt of federal funds.

89.    "[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously," so "States [can] exercise their choice knowingly," *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981).

90.    Federal contracts are an exercise of powers under the Spending Clause. Yet the Contractor Vaccine Mandate asks the States to agree to comply with the Task Force Guidance, which the Task Force purports to retain discretion to change at any time—the very definition of an ambiguous contract term. And the Procurement Act provides no notice to the States that the Contractor Vaccine Mandate would be a condition of their federal contracts. Accordingly, the Contractor Vaccine Mandate violates the Spending Clause.

91.    Additionally, the Contractor Vaccine Mandate violates the Spending Clause because it is not necessary to preventing the spread of COVID-19 or rationally related to any federal interest in a particular project or program subject to a federal contract. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 579 (2012).

## COUNT VI
### The Contractor Vaccine Mandate & Executive Order Are Beyond the Executive Branch's Authority

92.    Plaintiff States repeat and incorporate by reference each of the Complaint allegations stated above.

93.    Plaintiff States have a non-statutory cause of action to challenge the President's unlawful procurement actions. *See Chamber of Commerce v. Reich*, 74 F.3d 1322, 1330 (D.C. Cir. 1996).

"A court may review a Presidential Executive Order. A President's authority to act, as with the exercise of any governmental power, must stem either from an act of Congress, or from the Constitution itself, or a combination of the two." *Louisiana v. Biden*, 2021 WL 2446010, at *3 (W.D. La. June 15, 2021)

94.     *Ultra vires* review is available to challenge "whether the President has violated the Constitution, the statute under which the challenged action was taken, or other statutes, or did not have statutory authority to take a particular action." *Ancient Coin Collectors Guild v. U.S. Customs & Border Protection*, 801 F. Supp. 2d 383, 406 (D. Md. 2011) (citing *Mountain States Legal Found. v. Bush*, 306 F.3d 1132, 1136 (D.C. Cir. 2002)); *see also Assoc. Builders & Contractors of Se. Tex. v. Rung*, 2016 WL 8188655, at *5 (E.D. Tex. Oct. 24, 2016) ("The DOL, a federal agency also operating within the Executive Branch, has implemented the President's Executive Order by issuing the Guidance incorporated by reference in the new Rule. Therefore, the Executive Order may be challenged by Plaintiffs on both statutory and non-statutory grounds.") (citing *Chamber of Commerce of the U.S. v. Reich*, 74 F.3d 1322, 1324 (D.C. Cir. 1996)).

95.     Because no statute authorizes any Defendant, including the President, to mandate vaccination for federal contractors and subcontractors—particularly when those contractors are sovereign States—the challenged actions (Executive Order, Task Force Guidance, OMB Rule, FAR Guidance) are not authorized by law and must be vacated and enjoined.

## COUNT VII
## The Task Force Guidance Was Issued Without Procedures Required by the Procurement Policy Act

96.     Plaintiff States repeat and incorporate by reference each of the Complaint allegations stated above.

97.     Under the Procurement Policy Act, procurement policies must be published for public comment in the Federal Register 60 days before taking effect if the policy "relates to the expenditure of appropriate funds" and either "has a significant effect beyond the internal operating procedures of

the agency issuing the policy" or "has a significant cost or administrative impact on contractors." 41 U.S.C. § 1707(a)(1).

98.     The Task Force Guidance is a procurement policy and/or procedure under 41 U.S.C. §1707(a).

99.     The Task Force Guidance relates to the expenditure of appropriated funds, has a significant effect beyond any agency's internal operating procedures, and imposes a significant cost and administrative impact on contractors and offerors.

100.     Defendants did not publish the Task Force Guidance in the Federal Register or provide a 60-day public comment period as required by 41 U.S.C. §1707. Defendants also failed to publish in the Federal Register the OMB Rule determining that the Contractor Vaccine Mandate promotes economy and efficiency, and similarly failed to provide a public comment period.

101.     No Defendant or authorized officer ever purported to waive the requirements of the Procurement Policy Act. Even if such an attempt was made, the Contractor Vaccine Mandate is not eligible for a waiver of notice and public comment procedures under 41 U.S.C. §1707.

102.     Because Defendants failed to comply with the Procurement Policy Act's procedural requirements in issuing the Task Force Guidance and OMB Rule, both are unlawful.

## COUNT VIII
## The OMB Rule Was Issued Without Notice and Comment in Violation of the APA

103.     Plaintiff States repeat and incorporate by reference each of the Complaint allegations stated above.

104.     OMB is a federal agency for purposes of the Administrative Procedure Act.

105.     The APA vests courts with power to "hold unlawful and set aside agency action" taken "without observance of procedure required by law." 5 U.S.C. §706(2)(D).

106.     If the OMB Rule is not subject to the procedures of the Procurement Policy Act, it is a substantive, legislative rule and final agency action under the APA. 5 U.S.C. §551(4).

107.    The OMB Rule is final agency action because it "mark[s] the consummation of the agency's decision-making process" and is an agency action "by which rights or obligations have been determined, or from which legal consequences will flow." *Louisiana v. Biden*, 2021 WL 2446010, at *12 (W.D. La. June 15, 2021) (citing *U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016)).

108.    The OMB Rule is a substantive legislative rule because it modifies Plaintiff States' rights and obligations.

109.    The OMB Rule violates the APA because it was not issued through the APA's notice and comment procedures. *See Dep't of Labor v. Kast Metals Corp.*, 744 F.2d 1145, 1153 (5th Cir. 1984) ("An agency rule that modifies substantive rights and interests can only be nominally procedural, and the exemption for such rules of agency procedure cannot apply.").

### COUNT IX
### The OMB Rule Is Arbitrary and Capricious

110.    Plaintiff States repeat and incorporate by reference each of the Complaint allegations stated above.

111.    Under the APA, a court must "hold unlawful and set aside agency action" that is arbitrary or capricious or otherwise not in accordance with law or contrary to the Constitution. 5 U.S.C. §706(2)(A).

112.    "[A]gency action is lawful only if it rests on a consideration of the relevant factors" and "important aspects of the problem." *Michigan v. EPA*, 576 U.S. 743, 750-52 (2015) (cleaned up).

113.    The OMB Rule contains no reasoning or explanation to support its conclusion that the Contractor Vaccine Mandate would further economy and efficiency in federal procurement. And the Task Force Guidance upon which OMB passed did not itself provide any justification. Nor did the Executive Order. Because neither the OMB Rule nor any of the actions underlying the Contractor Vaccine Mandate contain any reasoning for imposing the mandate, much less reasoning grounded in

the statutory factors, the OMB Rule is arbitrary and capricious. *See Louisiana v. Biden*, 2021 WL 2446010, at *18 (W.D. La. June 15, 2021) ("A command in an Executive Order does not exempt an agency from the APA's reasoned decisionmaking requirement.").

114.    The OMB Rule is also arbitrary and capricious because it ignores a "centrally relevant factor"—costs to the States. *Michigan v. EPA*, 576 U.S. 743, 752-53 (2015). As discussed supra ¶¶54-68, Plaintiff States have overwhelming reliance interests in their existing federal contracts and ability to compete for future contracts. The OMB Rule is arbitrary and capricious because it utterly ignores these reliance interests. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913-14 (2020).

115.    The OMB Rule is arbitrary and capricious because its rationales are flagrantly pretextual. As recounted above, the President has stated several times that the Contractor Vaccine Mandate is part of a broader program aimed at increasing vaccination rates. The OMB Rule, however, eschews this rationale and tries to pigeonhole the Mandate into the Procurement Act's statutory factors. The presence of such blatant pretext is enough to render the Contractor Vaccine Mandate arbitrary and capricious. *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2575-76 (2019).

116.    Given its total lack of explanatory support, the OMB Rule fails to consider several important aspects of the problem, including the effect of large-scale resignations; the impact on State budgets, pension funds, and bond obligations; other State reliance interests; natural immunity; contractors who work from home or outside; or whether a religious exemption would ease compliance and displace less State law.

117.    For each of these independently sufficient reasons, the OMB Rule is arbitrary and capricious.

## COUNT X
## The OMB Rule Is Contrary to Law

118.    Plaintiff States repeat and incorporate by reference each of the Complaint allegations stated above.

119.    Courts must "hold unlawful and set aside agency action" that is "not in accordance with law" or "in excess of statutory ... authority." 5 U.S.C. §706(2)(A), (C).

120.    The OMB rule violates 41 U.S.C. §1303(a). That provision authorizes only the FAR Council to issue government-wide procurement regulations with the force of law. Neither OMB nor the Task Force are the FAR Council and thus they have acted beyond their statutory authority and in conflict with 41 U.S.C. §1303(a) by approving and promulgating a government-wide procurement regulation. And the Executive Order's attempt to circumvent §1303(a) by delegating power to the OMB director does not cure this violation because the President himself has no power to issue government-wide procurement regulations. *See, e.g.*, U.S. Dep't of Justice, Office of Legal Counsel, *Centralizing Border Control Policy Under the Supervision of the Attorney General*, 26 Op. OLC 22, 23 (2002) ("Congress may prescribe that a particular executive function may be performed only by a designated official within the Executive Branch, and not by the President.").

121.    Similarly, the Procurement Act vests the President with power only to issue "[p]olicies and directives" to the Executive Branch necessary to carry out the Act. 40 U.S.C. §121(a). This conferral of directive authority does not authorize the President to issue regulations with the force of law. Other text in the same statute confirms that conclusion: Congress authorized the GSA Administrator, not the President, to do just that—issue regulations with the force of law. *See Id.* §121(c) (vesting GSA Administrator with power to "prescribe regulations"). The Contractor Vaccine Mandate imposes such obligations upon all government contractors and is thus a "regulation" rather than a policy or directive. Accordingly, the President's delegation of his power under the Procurement Act to OMB does not cure the violation of the Procurement Act's vesting of exclusive authority to issue

government-wide regulations with officers who are not the President. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.").

122.    Additionally, even if the Procurement Act authorized the President to issue orders with the force or effect of law, it would not authorize approval of the Task Force guidance. The Procurement Act does not authorize the President to issue any order merely because he believes, as the Procurement Act's statement of purpose states, it will promote "an economical and efficient" procurement system. 40 U.S.C. § 101; *see* 86 Fed. Reg. at 50,985 ("This order promotes economy and efficiency in [f]ederal procurement."). Such a broad reading would mistake a prefatory purpose statement for a grant of authority. *See, e.g.*, *D.C. v. Heller*, 554 U.S. 570, 578 (2008) ("[A]part from [a] clarifying function, a prefatory clause does not limit or expand the scope of the operative clause.").

123.    As discussed above, because the Procurement Act contains no clear authorization to impose a sweeping alteration of the American economy, the OMB Rule can find no footing in the Procurement Act's "efficiency and economy" text. And providing the federal government with an "economic and efficient system for" procurement is not a broad enough delegation to impose nationwide social policy that Congress has not separately authorized. Beyond that, EO 14042 is divorced from the practical needs of procurement. It will exclude otherwise competitive bidders, cause contractors to suffer labor shortages, and is substantially overbroad in, for example, refusing to account for natural immunity and the low transmission risk for COVID-19 outdoors. Given those serious shortcomings and failure even to provide a substantial justification, Congress's lack of clear authorization is all the more deafening.

124.    Finally, the OMB Rule is inconsistent with the requirements of the Competition in Contracting Act, which requires federal agencies to provide for "full and open competition through the use of competitive procedures." 41 U.S.C. §3301; *see also* 40 U.S.C. §121(a) (requiring "policies"

issued by the President under the Procurement Act to be "consistent with this subtitle"); *id.* at §111 (defining "this subtitle" in 40 U.S.C. §121(a) as to also refer to division C (except §§3302, 3501(b), 3509, 3906, 4710, and 4711) of subtitle I of title 41).

### COUNT XI
### The FAR Guidance Was Issued Without Notice and Comment in Violation of the Procurement Policy Act

125.    Plaintiff States repeat and incorporate by reference each of the Complaint allegations stated above.

126.    Under the Procurement Policy Act, procurement policies must be published for public comment in the Federal Register 60 days before taking effect if the policy "relates to the expenditure of appropriate funds" and either "has a significant effect beyond the internal operating procedures of the agency issuing the policy" or "has a significant cost or administrative impact on contractors." 41 U.S.C. § 1707(a)(1).

127.    The FAR Guidance is a procurement policy and/or procedure under 41 U.S.C. §1707(a).

128.    The FAR Guidance relates to the expenditure of appropriated funds, has a significant effect beyond any agency's internal operating procedures, and imposes a significant cost and administrative impact on contractors and offerors.

129.    Defendants did not publish the FAR Guidance in the Federal Register or provide a 60-day public comment period as required by 41 U.S.C. §1707.

130.    No Defendant or authorized officer ever purported to waive the requirements of the Procurement Policy Act. Even if such an attempt was made, FAR Guidance is not eligible for a waiver of notice and public comment procedures under 41 U.S.C. §1707.

131.    Accordingly, the FAR Guidance violated the Procurement Act's notice-and-comment provisions. Under the APA, agency action that was conducted "without observance of procedure required by law" must be held unlawful and set aside. 5 U.S.C. §706(2)(D).

## COUNT XII
## Administrative Procedure Act
## (FAR Guidance Arbitrary and Capricious)

132.    Plaintiff States repeat and incorporate by reference each of the Complaint allegations stated above.

133.    The FAR Guidance is final agency action and a legislative rule because its practical effect is to bind contractors; it alters rights and obligations; and it represents the culmination of the agency's decision making process.

134.    The FAR Guidance provides no justification whatsoever for its deviation policy. Nor does it explain upon which authority it rests to create a government-wide contractor vaccination regulation. As discussed above, no such authority exists.

135.    Because Congress never clearly delegated to the FAR Council the power to issue a Contractor Vaccine Mandate, the FAR Guidance is unlawful. And the FAR Guidance is arbitrary and capricious because it contains no reasoning, fails to consider statutory factors, and fails to consider important aspects of the problem including State reliance interests.

## COUNT XIII
## Declaratory Judgment

136.    Plaintiff States repeat and incorporate by reference each of the Complaint allegations stated above.

**WHEREFORE**, Plaintiff States ask this Court to enter judgment in their favor and to provide the following relief:

a.   Hold unlawful and set aside the Executive Order, OMB Rule, Task Force Guidance, and FAR Council Guidance;

b.   Issue preliminary and permanent injunctive relief enjoining Defendants from enforcing the Executive Order, OMB Rule, Task Force Guidance, and FAR Council Guidance;

c.   Issue declaratory relief declaring the Executive Order, OMB Rule, Task Force Guidance, and FAR Council Guidance unlawful;

d.   Issue preliminary and permanent injunctive relief enjoining Defendants from issuing any COVID-19 requirements on federal contractors without first following the required notice-and-comment procedures;

e.   All other relief to which Plaintiff is entitled, including but not limited to attorneys' fees and costs.

Respectfully submitted,

Dated: November 4, 2021

  */s/ Eilzabeth B. Murrill*

TYLER R. GREEN*
DANIEL SHAPIRO*
CONSOVOY MCCARTHY PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-9423

*Counsel for Plaintiff State of Louisiana*


OTHER COUNSEL:

THEODORE E. ROKITA
  Indiana Attorney General
THOMAS M. FISHER*
  Solicitor General
State of Indiana
OFFICE OF THE ATTORNEY GENERAL
Indiana Government Center South
302 W. Washington St., 5th Floor
Indianapolis, IN 46204
Tom.fisher@atg.in.gov
*Counsel for the State of Indiana*


LYNN FITCH
  Attorney General of Mississippi
JOHN V. COGHLAN*
  Deputy Solicitor General
WHITNEY LIPSCOMB*
  Deputy Attorney General
State of Mississippi
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205
Tel: (601) 359-3680
*Counsel for the State of Mississippi*


*Pro Hac Vice admission application forthcoming*

ELIZABETH B. MURRILL #20685
  Solicitor General
J. SCOTT ST. JOHN #36682
  Deputy Solicitor General
JOSIAH KOLLMEYER #39026
MORGAN BRUNGARD*
Assistant Solicitors General
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, LA 70804
Tel: (225) 326-6766
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov
kollmeyerj@ag.louisiana.gov
brungardm@ag.louisiana.gov
*\* Pro Hac Vice admission application forthcoming*